1

2

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Street, Ste. 650, #1507
San Francisco, CA 94108
Telephone: (415) 839-7000
Facsimile: (888) 410-0415
Email: yeremey@skclassactions.com
        brittany@skclassactions.com

*Attorneys for Plaintiffs*

[*Additional Counsel on Signature Page*]

3

4

5

6

7

8

9          **UNITED STATES DISTRICT COURT**

10         **NORTHERN DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| CLAIR AWAD and KEVIN SMITH, on behalf of themselves and all others similarly situated, | CASE NO. 3:24-cv-06834-JD |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| TRADER JOE'S COMPANY, | Date: December 4, 2025 |
| Defendant. | Time: 10:00 a.m. |
| | Location: Courtroom 11, 19th Floor |
| | Judge: Hon. James Donato |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION.................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      PLAINTIFFS ALLEGE A REASONABLE CONSUMER WOULD BE
        MISLED ...................................................................................................................2

        A.      The SAC Satisfies The Applicable Legal Standards....................................2

        B.      Defendant's Cases Are Distinguishable And *Golikov* Bolsters
                Plaintiffs' Claims........................................................................................3

        C.      Plaintiffs Plausibly Allege The Falsity Of The Product's Label ...............6

        D.      Plaintiffs' Allegations Are Sufficient To Place Defendant On Notice.......9

        E.      Plaintiffs Sufficiently Plead The Avocado Representation Is Material....11

II.     PLAINTIFFS STATE A CLAIM FOR BREACH OF IMPLIED
        WARRANTY .........................................................................................................12

III.    PLAINTIFFS STATE A CLAIM FOR INTENTIONAL
        MISREPRESENTATION .....................................................................................13

IV.     PLAINTIFFS STATE A CLAIM FOR PUNITIVE DAMAGES.......................14

CONCLUSION .................................................................................................................15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Proctor & Gamble Co.*
  2019 WL 6520045 (C.D. Cal. June 3, 2019) ................................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 1

*Bounthon v. Proctor & Gamble Co.*
  2024 WL 4495501 (N.D. Cal. Oct. 15, 2024) ............................................................. 8

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F. 3d 336 (9th Cir. 1996) ....................................................................................... 8

*Clark v. State Farm Mut. Auto. Ins. Co.*,
  231 F.R.D. 405 (C.D. Cal. 2005) ............................................................................... 14

*Cleveland v. Campbell Soup Co.*,
  647 F. Supp. 3d 772 (N.D. Cal. 2022) ....................................................................... 11

*Dawar v. Sovena USA, Inc.*,
  2025 WL 2495915 (N.D. Ill. Aug. 29, 2025) ............................................................. 10

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) ....................................................................... 11

*Engalla v. Permanente Medical Grp., Inc.*,
  15 Cal. 4th 951 (1997) ................................................................................................ 11

*Evancho v. Fisher*,
  423 F.3d 347 (3d Cir. 2005) ........................................................................................ 6

*Evans v. DSW, Inc.*,
  2017 WL 7058233 (C.D. Cal. Feb. 2, 2017) ............................................................... 6

*Figy v. Frito-Lay North America, Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ....................................................................... 11

*Golikov v. Walmart*,
  2025 WL 648532 (C.D. Cal. Feb. 27, 2025) ..................................................... 4, 5, 10, 12

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..................................................................... 11

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ......................................................................... 2

*In re Aluminum Warehousing Antitrust Litig.*,
   95 F. Supp. 3d 419 (S.D.N.Y. 2015) ............................................................................ 6

*Kev & Cooper, LLC v. Furnish My Place, LLC*,
   2021 WL 6618745 (C.D. Cal. Nov. 28, 2021) ............................................................. 14

*Kowalsky v. Hewlett-Packard Co.*,
   2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ............................................................. 13

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................................. 11

*Lee v. Sec. Life of Denver Ins. Co.*,
   2025 WL 2964013 (C.D. Cal. Sep. 22, 2025) ................................................................ 7

*Leon-Calderon v. Old Dominion Freight Line, Inc.*,
   2023 WL 1931328 (C.D. Cal. Feb. 10, 2023) .............................................................. 14

*Martinez v. Metabolife Int'l, Inc.*,
   113 Cal. App. 4th 181 (2003) ...................................................................................... 13

*McLellan v. Fitbit, Inc.*,
   2018 WL 2688781 (N.D. Cal. June 5, 2018) ................................................................. 9

*Meyer v. Colavita USA Inc.*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) ......................................................... 5, 8

*Morris v. Mott's LLP*,
   2019 WL 948750 (C.D. Cal. Feb. 26, 2019) ................................................................ 13

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) .................................................................................... 5

*Oppenheimer v. Southwest Airlines Co.*,
   2013 WL 3149483 (S.D. Cal. June 13, 2013) .............................................................. 14

*Prescott v. Saraya USA, Inc.*,
   2025 WL 1361486 (S.D. Cal. May 9, 2025) ................................................................ 11

*Rees v. PNC Bank, N.A.*,
   308 F.R.D. 266 (N.D. Cal. 2015) ................................................................................. 15

*Roney v. Miller*,
   705 F. App'x 670 (9th Cir. 2017) ................................................................................. 15

*Ruhnke v. SkinMedica, Inc.*,
  2014 WL 12577172 (C.D. Cal. Sept. 5, 2014)..................................................................... 15

*Saidian v. Krispy Kreme Doughnut Corp.*,
  2017 WL 945083 (C.D. Cal. Feb. 27, 2017) ......................................................................... 4

*Samet v. Proctor & Gamble Co.*,
  2019 WL 13167115 (N.D. Cal. Jan. 15, 2019) ................................................................... 12

*Scheibe v. ProSupps USA, LLC*,
  141 F.4th 1094 (9th Cir. 2025)................................................................................... 7, 8, 9

*Schuchardt v. President of the United States*,
  839 F.3d 336 (3d Cir. 2016)................................................................................... 6, 9

*Shank v. Presidio Brands, Inc.*,
  *2018 WL 510169* (N.D. Cal. Jan. 23, 2018) ....................................................................... 15

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
  2023 WL 6541865 (N.D. Cal. Oct. 5, 2023) ...................................................................... 15

*Smith v. Safeway, Inc.*,
  2025 WL 2778327 (N.D. Cal. Aug. 22, 2025) ..................................................................... 4

*Smith v. Santa Cruz*,
  2023 WL 8360054 (N.D. Cal. Dec. 1, 2023) ...................................................................... 14

*Sono v. Georgia-Pac. Corrugated LLC*,
  2025 WL 50596 (N.D. Cal. Jan. 8, 2025) ........................................................................... 7

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)................................................................................... 5, 9

*Sutton v. Tapscott*,
  120 F.4th 1115 (2d Cir. 2024) ........................................................................................... 6

*Swingless Golf Club Corp. v. Taylor*,
  679 F. Supp. 2d 1060 (N.D. Cal. 2009) ............................................................................. 14

*Trammell v. Albertsons Companies, Inc.*,
  2024 WL 5480483 (S.D. Cal. Nov. 25, 2024) ................................................................. 2, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S 544 (2007)............................................................................................................. 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................ 3

*Viggiano v. Hansen Natural Corp.*,
   2013 WL 2005430 (C.D. Cal. May 13, 2013) ............................................... 4, 5

*Watson v. Crumbl LLC*,
   736 F. Supp. 3d 827 (E.D. Cal. 2024) ............................................................... 2

*Whiteside v. Kimberly Clark Corp.*,
   108 F.4th 771 (9th Cir. 2024) ............................................................................ 2

*Williams v. Gerber Prods. Co.*,
   552 F. 3d 934 (9th Cir. 2008) ............................................................................ 2

**Statutes**

Cal. Com. Code § 2314 ............................................................................................ 13

Cal. Com. Code § 2314(2)(c) ................................................................................... 13

Cal. Com. Code § 2314(2)(f) .................................................................................... 13

California Civil Code § 3294(a) ................................................................................ 14

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................... 9, 11, 15

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 14

Fed. R. Civ. P. 12(f) ................................................................................................ 14

**Other Authorities**

Uniform Commercial Code section 2-314 ................................................................ 13

**INTRODUCTION**

This is a straight-forward case. Trader Joe's ("Defendant") "has marketed, labeled, advertised, and sold its Avocado Oil (the "Class Products") to consumers with packaging that has prominently represented that it is avocado oil." Second Amended Complaint ("SAC") ¶ 1. The *Avocado Oil Representation* is prominently displayed on the front label in the same manner on all Class Products:



*Id.* ¶¶ 22, 25. As shown above, "[t]his message is further reinforced by the ingredient list on the Class Products' back label, which lists "avocado oil" as the only ingredient[.]" *Id.* ¶ 25. But, independent testing has revealed the Class Products are adulterated because they do "not match the [fatty acid] 'fingerprint' corresponding to avocado oil[,]" and contained "levels of Palmitic, Stearic, and Behenic acid" outside the standard for avocado oil. *Id.* ¶¶ 44-55; *see also* Declaration of Dr. John W. Finley ("Finley Decl.") (ECF 38-1); Exs. A-B.

Defendant's motion primarily rests on its contention that "the SAC's main allegations about why Trader Joe's avocado oil representation is false and deceptive are too vague to plausibly state a claim or provide defendants with fair notice of the allegations they will be called upon to answer." Motion to Dismiss ("MTD") at 1. But this argument fails to take the allegations in the SAC in the light most favorable to Plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim is plausible if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged."). As discussed below, Plaintiffs allege that testing has revealed the products do not conform

1    to standard for avocado oil because the products contain "levels of Palmitic, Stearic, and Behenic

2    acid" outside the standard for avocado oil, and therefore the products are adulterated. Such

3    allegations are more than sufficient to establish the plausibility of Plaintiffs' claims.

4                                        **ARGUMENT**

     **I.      PLAINTIFFS ALLEGE A REASONABLE CONSUMER WOULD BE MISLED**

5
            **A.      The SAC Satisfies The Applicable Legal Standards**
6
7           Defendant cites legal standards applicable to plausibility, whether a reasonable consumer may

8    be deceived by the Product label, and allegations sounding in fraud under Rule 9(b). But Defendant

9    does ***not*** advance any colorable argument based on this recitation of law. Instead, Defendant merely

10   states that the Plaintiffs "must satisfy three pleading requirements to state their claims." MTD at 5.

11   Plaintiffs here have done so.

12          Plaintiffs' CLRA, UCL, FAL, breach of express warranty, and intentional misrepresentation

13   claims are governed by the reasonable consumer standard. "The touchstone under this test is whether

14   the product labeling and ads promoting the product have a meaningful capacity to deceive." *Watson*

15   *v. Crumbl LLC*, 736 F. Supp. 3d 827, at 841 (E.D. Cal. 2024) (internal citation omitted). "Whether a

16   business practice is deceptive will usually be a question of fact not appropriate for decision on

17   demurrer." *Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008). Nonetheless, Defendant

18   asks the Court to ignore precedent and hold that no reasonable consumer could be deceived by the

19   Products' label. Courts in this district and sister districts in California routinely deny such requests

20   based on the allegations in the complaint, holding that "a complaint may only be dismissed on the

21   pleadings  when *no* reasonable  consumer  could  be deceived  by  the  advertising." *Trammell  v.*

22   *Albertsons Companies, Inc*., 2024 WL 5480483, at *10 (S.D. Cal. Nov. 25, 2024); *Ham v. Hain*

23   *Celestial Grp., Inc*., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (similar).

24          Here, it is reasonable for a consumer to believe, based on the unqualified "Avocado Oil"

25   representation, that the Products consist of only avocado oil. This is the logical interpretation of the label,

26   and it is clearly sufficient to state a claim under the reasonable consumer test. *Whiteside v. Kimberly*

27   *Clark Corp.*, 108 F.4th 771, at 783, 786 (9th Cir. 2024) (holding "plant-based" sufficient to state UCL,

28   FAL, CLRA, breach of warranty, and unjust enrichment claims).

1    Further, the SAC properly satisfies the pleading requirements under Rule 9(b) because the

2    Plaintiffs properly allege "the who, what, when, where, and how" of their claims. *Vess v. Ciba-Geigy*

3    *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Specifically, the Complaint identifies the *who*:

4    Kevin Smith and Claire Awad. SAC ¶¶ 9-15. The *what*: Defendant Trader Joe's' deceptively labeled

5    avocado oil. *Id*. ¶¶ 1-2. The *when* and *where*: Plaintiff Smith purchased his product from a Trader

6    Joe's location in Oakland, CA in September 2024; Plaintiff Awad purchased her product from a

7    Trader Joe's location near Bellmore, NY in late summer 2024. *Id*. ¶¶ 10, 13. And, *how* the labeling is

8    deceptive: The packaging unequivocally states that the oil is "Avocado Oil" but laboratory testing

9    commissioned by Plaintiffs' counsel and further analyzed by Dr. John W. Finley confirmed that the

10   Class Products are not only avocado oil and are adulterated with other oils. *Id*. ¶¶ 2-4.

11   Based on the foregoing, Plaintiffs have satisfied the pleading standard applicable to the SAC

12   and have stated colorable claims that they were deceived by the label on Defendant's Product.

13       **B.    Defendant's Cases Are Distinguishable And *Golikov* Bolsters Plaintiffs' Claims**

14   Defendant argues, that, based on dismissals in *McConnon v. The Kroger Co.* and *Hawkins v.*

15   *Walmart, Inc.*, and a two-page order issued in *Smith v. Safeway, Inc.*, that the court should dismiss the

16   Second Amended Complaint. MTD at 6. But the narrow holdings of *McConnon*, *Hawkins*, and *Smith*

17   *v. Safeway* are inapplicable. To date, no court has evaluated a complaint as comprehensive as the

18   SAC, which includes details regarding Codex, Plaintiffs' independent laboratory testing, and the

19   scientific interpretation of this evidence in a sworn declaration from an experienced food oils chemist.

20   *First*, *McConnon* and *Hawkins* were decided on the basis that the plaintiffs alleged their

21   products falsely implied that the avocado oil was "pure," and without a set definition for that term,

22   neither Defendant nor the Court could evaluate the merits of the claim. Here, there is no such credible

23   dispute or ambiguity. Defendant and the Court can easily evaluate the merits of Plaintiffs' allegation

24   that, despite the label listing only one ingredient, there are other cheaper oils mixed in with the

25   avocado oil. Further, Defendant's reliance on *Hawkins* for the point that the fatty acid analysis does

26   not advance Plaintiffs' claims is entirely misplaced. MTD at 7. The SAC thoroughly details (1) what

27   fatty acids are (SAC ¶¶ 31-34), (2) how fatty acid analysis is used to identify food oils, especially

28   those with a standard adopted by Codex (*id*. ¶¶ 35-45), (3) the testing commissioned by Plaintiffs'

counsel (*id.* ¶¶ 46-48), which identifies the units of the Product that were tested by lot number (*id.*, Exs. A & B), and (4) interpretation of the testing by Dr. John W. Finley that forms the basis of the allegations (*id.* ¶¶ 49-56; Finley Decl.). The SAC provides substantial detail regarding the testing of the Products and that the results of the testing confirmed the presence of fatty acid levels far outside of the Codex reference ranges. This level of exacting detail, supported by thorough analysis from an experienced food oils scientist, is a far cry from the detail that led to dismissal in *Hawkins*.

    *Second*, unlike in *Smith*, the allegations in the SAC "state what tests were conducted, what bottles were tested, when they were tested, or what specific results were obtained." 2025 WL 2778327, at *1 (N.D. Cal. Aug. 22, 2025). While the court held that the complaint failed to specify how the product failed to meet Codex, or why such a failure is indicative of adulteration, the SAC *does* this in explicit detail. SAC ¶¶ 31-56. Rather than forming the basis for Plaintiffs' allegations, the UC Davis study and The Washington Post article serve as useful data points bolstering Plaintiffs' case. It is the testing of the Product commissioned by Plaintiffs' counsel and interpreted by Dr. Finley that provide the evidentiary support for Plaintiffs' allegations that the Product is not comprised of solely avocado oil. Moreover, the Washington Post reporting and UC Davis study both predate the adoption of the Codex standard in November 2024, which is the appropriate international standard employed by Dr. Finley in his analysis, and which forms the basis of the allegations that the Product is *not* just avocado oil.

    *Third*, Defendant contends that it is implausible that Plaintiffs read the Product label to mean that the Product contains only avocado oil. MTD at 7. But this argument cannot support dismissal. *Golikov v. Walmart*, 2025 WL 648532 at *3 (C.D. Cal. Feb. 27, 2025). It is more than plausible for a reasonable consumer to believe a product contains the ingredients represented on the label. *See Saidian v. Krispy Kreme Doughnut Corp.*, 2017 WL 945083, at *3 (C.D. Cal. Feb. 27, 2017) ("It is plausible that Plaintiff will be able to show that reasonable consumers believe that 'Raspberry-Filled' doughnuts are filled with raspberries, 'Maple Iced Glazed' and 'Maple Bar' doughnuts contain maple syrup or maple sugar, and 'Glazed Blueberry Cake' doughnuts contain actual blueberries."); *see also Viggiano v. Hansen Natural Corp.*, 2013 WL 2005430 (C.D. Cal. May 13, 2013) ("In cases where a product's front label is … consistent with the statement of

ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the [product] clear")

     *Golikov v. Walmart* is on point here. In *Golikov*, the plaintiff alleged that a product labeled as "Avocado Oil" falsely represented that it contained "only avocado oil" when it was adulterated. *Id.* at *2. The defendant – who is also represented by Trader Joe's' counsel – argued that *McConnon* and *Hawkins* compelled dismissal, but the court rejected that argument:

> *McConnon* is readily distinguishable and inapplicable to this case. … [T]he allegations are significantly different. In *McConnon*, the plaintiff alleged that the product falsely implied that the avocado oil was "pure." *Id*. at *1. The district court found that these allegations were deficient for two reasons. First, the term "pure" was "nowhere to be found on the bottle." *Id*. at *3. And second, even if the term "pure" had been on the bottle, it appeared to be susceptible to multiple, widely varying definitions. *Id*. Without a set definition, "neither Defendant nor the Court [could] evaluate the merits of the claim[.]" *Id*.
>
> Here, these deficiencies are not present. First, Plaintiff does not rely on any implied terms. **Plaintiff challenges exactly what the label says: that the Product contains only one ingredient—avocado oil.** Second, there is no credible dispute or ambiguity as to the meaning of the allegation. **Plaintiff claims that, despite the label listing only one ingredient, there are other cheaper oils mixed in with the avocado oil. Both Defendant and the Court can easily evaluate the merits of such a claim.** Thus, this argument fails.

*Id.* at *3 (emphasis added).

The *Golikov* court further concluded that *Hawkins* is "of no moment" because "[m]uch like *McConnon*, the plaintiff in that case similarly relied on an implied representation of 'purity'." *Id.* at *3, n. 1. Further, the court found that the UC Davis study supported the conclusion that the products were adulterated:

> [T[he mere existence of alternative explanations is immaterial unless the explanations are "so likely to be true" as to render the plaintiff's theory implausible. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Naimi* [ *v. Starbucks Corp.*, 798 F. App'x 67, 69 (9th Cir. 2019)] (declining to dismiss claims based on alternative explanations); *Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing claim based on a study that yielded "somewhat inconclusive" results). Defendant does not explain why these alternative explanations are more likely than the study's conclusion that the Product was adulterated, let alone so likely as to render adulteration implausible. Thus, these arguments fail.

*Id.* at *4.

1    Like in *Golikov*, Plaintiffs allege that a product labeled as "Avocado Oil" falsely represents

2    that it contains "only avocado oil." SAC ¶¶ 2-3. Thus, Plaintiffs challenge exactly what the label says:

3    That the Product contains only one ingredient – avocado oil. Further, contrary to Defendant's

4    argument, the SAC describes that Codex fatty acid profiles are effectively a "fingerprint" standard

5    within which ***all authentic samples of a specific oil*** will fit. SAC ¶ 36. So, when the test results for

6    the Product ***did not match*** the Codex standard, that indicates that the Product contains oils other than

7    avocado oil. Dr. Finley's interpretation of Plaintiffs' test results confirms this. *Id.* ¶ 54; Finley Decl.

8    ¶¶ 18-19, Conclusion.

9    At the pleadings stage, Plaintiffs are not required to allege what other oils might be in the

10    Product or how these other oils entered Defendant's Product, especially when that information will

11    tend to be revealed through discovery. It is sufficient that Plaintiffs have plausibly alleged that the

12    Product is not comprised of just avocado oil, which contradicts the Avocado Oil Representation on

13    the front label and renders the labeling false and deceptive.

14    **C.    Plaintiffs Plausibly Allege The Falsity Of The Product's Label**

15    Defendant makes a litany of merits-based attacks on the sufficiency of the testing by UC Davis

16    and Plaintiffs' independent laboratory, both of which show that the Product is adulterated with other

17    oils. As an overarching matter, it is inappropriate to "delve into the issues of fact going to the heart of

18    the dispute on a motion to dismiss…" *Evans v. DSW, Inc.*, 2017 WL 7058233, at *7–8 (C.D. Cal. Feb.

19    2, 2017). At the motion-to-dismiss stage, "courts cannot inject evidentiary issues into the plausibility

20    determination," *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016),

21    because "the [subsequent] discovery process is designed to enable [plaintiffs] … to un[ ]cover

22    evidence that may support the allegations set forth in a complaint," *Evancho v. Fisher*, 423 F.3d 347,

23    354 (3d Cir. 2005). "[T]he plausibility standard requires only 'enough facts to raise a reasonable

24    expectation that discovery will reveal evidence'[,]" *Sutton v. Tapscott*, 120 F.4th 1115, 1123 (2d Cir.

25    2024), and the Court "may not weigh the evidence in the guise of a plausibility analysis." *In re*

26    *Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 437 (S.D.N.Y. 2015). Importantly, "[a]

27    plaintiff's allegations need not defeat every alternative explanation. Instead, '[p]laintiff's complaint

28    may be dismissed only when defendant's plausible alternative explanation is so convincing that

1    plaintiff's explanation is *implausible*.'" *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1100 (9th

2    Cir. 2025) (emphasis in original, internal citation omitted).

3           As an initial matter, Defendant posits that there could be some cause other than adulteration

4    that may contribute to the disparity between the Codex standard for avocado oil and the actual fatty

5    acid profile of the Product, such as natural variability in avocados, based largely on the UC Davis

6    study's acknowledgment of variation among avocado cultivars. MTD at 9-10. But this argument

7    misunderstands the science and the law.

8           The UC Davis study was accepted for publication in May 2023, and published that October.

9    At the time, Codex had not yet adopted the standard for avocado oil. Codex adopted and incorporated

10    the standard on November 30, 2024. SAC ¶ 42. When the UC Davis researchers wrote that natural

11    variability was "still not completely understood[,]" they were describing the very issue that Codex set

12    out to, and ultimately did, resolve. The SAC makes clear that the Codex standard is "an inclusive

13    proposal that considers the characteristics of avocado oil produced in the various regions of the

14    world." *Id*. ¶ 40. During the 18 months between when the UC Davis paper was submitted and the

15    Codex standard was adopted, the working group responsible for developing the Codex standard

16    debated, discussed, and reached agreement. *Id*. ¶ 39, n. 15. The working group's report reflects that

17    they assessed and considered variability among avocados from growing regions worldwide. *Id*. Based

18    on the Codex standard, experts now are able to determine to a reasonable degree of scientific certainty

19    if avocado oil is adulterated. *See* Finley Decl., Conclusion ("[I]t is my opinion that because the

20    Products do not correspond to the standard of identity for avocado oil, the Products contain significant

21    quantities of other oil or oils that render the Products adulterated.").

22           Further, it is well-established that, on a motion to dismiss, a court "may not resolve" the

23    "motion by weighing the plausibility of competing allegations[.]" *Lee v. Sec. Life of Denver Ins. Co.*,

24    2025 WL 2964013, at *3 (C.D. Cal. Sep. 22, 2025) (internal citation omitted). Even if the court credits

25    Defendant's postulations, "[t]he court cannot dismiss a complaint that alleges a 'plausible version of

26    the events merely because the court finds a different version more plausible.'" *Sono v. Georgia-Pac.*

27    *Corrugated LLC*, 2025 WL 50596, at *1 (N.D. Cal. Jan. 8, 2025) (internal citation omitted).

28

Even so, Defendant raises the specter of false positives in the test results, citing to two inapplicable cases regarding PFAS, *Bounthon v. Proctor & Gamble Co.* and *Andrews v. Proctor & Gamble Co.* In *Bounthon*, the plaintiff tested tampons for total organic fluorine, which, if present, *could possibly indicate* the presence of PFAS chemicals, but the testing papers they cite conceded that the test methodology used is flawed and results in false positives. 2024 WL 4495501, at *8 (N.D. Cal. Oct. 15, 2024). In *Andrews*, the plaintiff did not conduct his own testing of the alleged PFAS containing dental floss, solely relying on a journal article, which was in turn relying on the same faulty total organic fluorine test as in *Bounthon. Andrews*, 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019).

Defendant also criticizes Plaintiffs' testing as limited, since the testing only assessed a handful of units of the Product. This cannot be squared with the law. The Ninth Circuit recently held that, at the pleadings stage, "preliminary testing of… one sample is enough… because it allows a court to draw a reasonable inference that testing a composite sample … would show that the [product] is misbranded[.]" *Scheibe*, 141 F.4th at 1099.

Next, Defendant attempts to tie the objective, conclusive results of Plaintiffs' testing to the subjective, "somewhat inconclusive[]" results in *Meyer v. Colavita USA, Inc*. ECF 41 at 11. Unlike the olive oil testing in *Meyer* that tested subjective criteria like taste and smell to assess the quality of the olive oil; here, the testing commissioned by Plaintiffs' counsel directly and objectively tested the fatty acids in the Product, and Codex provides the standard under which to interpret the result and conclusively determine that the Product is definitively something other than just avocado oil. That is precisely what Dr. Finley did in his declaration. *See generally*, Finley Decl.

While Defendant argues that Plaintiffs' allegations fail because they do not specifically allege **what other non-avocado oils** are present in the Product, this argument is irrelevant. Nothing in the law requires Plaintiffs to make such an allegation. At this juncture, Plaintiffs have pleaded allegations and supporting facts sufficient to show that the Product does not conform to the Codex standard for avocado oil, which is broadly written to account for natural variability, and thus, the Product is not just avocado oil and is deceptively mislabeled. For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co*., 80 F. 3d 336, 337–38 (9th Cir. 1996). Moreover, at the motion-to-

dismiss stage, "courts cannot inject evidentiary issues into the plausibility determination[.]" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016). All that is required under the Federal Rules is "'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F. 3d at 1217 (internal citation omitted). Here, Plaintiffs have plainly done enough.

Finally, insofar as Defendant argues that there is no nexus between the units of the Product purchased by Plaintiffs and the units tested, the Ninth Circuit recently addressed this issue head-on in *Scheibe*, in a circumstance where the product at issue was a heavily regulated dietary supplement and FDA established a definitive testing methodology to determine misbranding:

> Scheibe alleges that his testing methods complied with FDA regulations: he used the AOAC method for carbohydrates and bomb calorimetry for calories. But he does not allege that he complied with the FDA's sampling process. Instead, Scheibe simply alleges that one sample of the supplement, tested by an independent laboratory, contained more carbohydrates and calories than ProSupps listed on the supplement's label. Still, ***his preliminary testing of that one sample is enough . . . because it allows a court to draw a reasonable inference that testing a composite sample . . . would show that the supplement is misbranded under the Act.***

141 F.4th at 1099 (emphasis added). At this stage, like in *Scheibe*, preliminary testing conducted in accordance with established methods suffices to establish Plaintiffs' claims of deceptive mislabeling.

## D.  Plaintiffs' Allegations Are Sufficient To Place Defendant On Notice

Defendant asserts that dismissal is appropriate because Plaintiffs do "not identify how and why the Avocado Oil label is false." MTD at 12. That is incorrect. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The touchstone of Rule 9(b) is notice." *McLellan v. Fitbit, Inc.*, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). ("A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.") Generally, allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* Plaintiffs' allegations regarding the falsity of the Avocado Oil Representation satisfy Rule 9(b). Plaintiffs allege that Defendant represents the Trader Joe's brand Avocado Oil contains "'Avocado Oil,' meaning the bottle contains only avocado oil." SAC ¶¶ 22-

23. This message is reinforced by the ingredient list "which lists 'avocado oil' as the only ingredient." *Id.* ¶ 25. However, independent testing has revealed that the Products are not only avocado oil.

"[F]atty acid composition" is "used to identify oils and fats." *Id.* ¶ 44. "The gold standard [testing] methodology . . . is gas-liquid chromatography, which is used to separate the fatty acid components so that they can be quantified and analyzed." *Id.* ¶ 45. "In August 2024, Plaintiff[s]' counsel commissioned independent laboratory testing of multiple samples of the Class Products. The testing was conducted by Twin Arbor Analytical in San Luis Obispo, California[.]" *Id.* ¶ 46. "The third-party laboratory analyzed the fatty acid profiles of multiple samples of the Class Products using gas-liquid chromatography. The fatty acid profiles were then compared to fatty acid 'fingerprints' of avocado oil[.]" *Id.* ¶ 47. Plaintiffs attached copies of the test results to the SAC. Finley Decl., Exs A-B. The test results disclosed the quantitative value of each fatty acid in the Products. *See id.* "The third-party laboratory concluded, based on these results, that the fatty acid profile for the Class Products does not conform to the Codex standard for avocado oil." SAC ¶ 48; Finley Decl., Exs A-B. Further, Plaintiff's expert, Dr. John W. Finley "interpreted the laboratory testing results, and determined that the fatty acid profile of the Class Products does not match the 'fingerprint' corresponding to avocado oil." SAC ¶ 54. "Specifically, Dr. Finley noted that both samples tested contained levels of Palmitic (C16:0) acid, Stearic (C18:0) acid, and Behenic (C22:0) acid that fell outside of the Codex ranges for avocado oil." *Id.* ¶ 55; Finley Decl. ¶¶ 18-19. Put in simpler terms, Plaintiffs allege the Avocado Oil Representation is false because the Products do not conform to the Codex standard for Avocado Oil due to the inclusion of Palmitic, Stearic, and Behenic acid.

Taken together, these allegations are more than sufficient to place Defendant on notice. *Golikov*, 2025 WL 648532, at *4 (rejecting argument "that Plaintiff should provide further details, such as the exact type of oil the Product was adulterated with, the amount of oil that was added, and how it was added to the Product"); *Dawar v. Sovena USA, Inc.*, 2025 WL 2495915, at *2 (N.D. Ill. Aug. 29, 2025) (finding plaintiffs "have adequate support for their claims in the form of contemporaneous testing done on the at-issue oil . . . plaintiffs plead that samples of the defendant's products were tested against a fatty acid fingerprint unique to avocado oil, and did not match the fingerprint. . . . This suffices to state a plausible claim"); *Trammell*, 2024 WL 5480483, at *6 (finding

Rule 9(b) satisfied where plaintiff alleged "that testing on the Product was done on or about June 28, 2023 by Krueger Food Laboratories, Inc. of Chelmsford Massachusetts, and the testing revealed the D isomer was present in the Product "); *Prescott v. Saraya USA, Inc.*, 2025 WL 1361486, at *4 (S.D. Cal. May 9, 2025) ("Identifying the method of testing . . . is a sufficiently particularized detail to demonstrate Plaintiffs have a factual basis for their false representation claims and to put Defendant on notice of what type of test Plaintiffs' position is based on.")

Defendant's reliance on *Figy v. Frito-Lay North America, Inc.*, 67 F. Supp. 3d 1075 (N.D. Cal. 2014), is misplaced. There, the plaintiff alleged that the "Made with All Natural Ingredients" labeling was misleading but failed to describe how the "offending ingredients" were "unnatural[.]" *Figy*, 67 F. Supp. 3d at 1090. In contrast, here Plaintiffs allege the Avocado Representation is false because, contrary to the Avocado Oil Representations, the Products fatty acid profile does not correspond to that of avocado oil. Defendant's remaining cases also fail to support this argument. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1090 (N.D. Cal. 2018) (Plaintiff alleged that "healthy" labeling was fraudulent due to the presence of "excess[ive] added sugar" but failed to specify the *amount* of added sugar, as opposed to total sugar); *Cleveland v. Campbell Soup Co.*, 647 F. Supp. 3d 772, 775 (N.D. Cal. 2022) ("'0g Sugars' does not, on its face, say anything about calories.")

### E.    Plaintiffs Sufficiently Plead The Avocado Representation Is Material

Defendant argues Plaintiffs "cannot allege materiality" because they "fail[ ] to identify what renders the product not 'only avocado oil." MTD at 13. Not so. "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'… and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Engalla v. Permanente Medical Grp., Inc.*, 15 Cal. 4th 951, 977 (1997); *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011) ("materiality is generally a question of fact" not appropriate for disposition on a motion to dismiss); *see also Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1081 (N.D. Cal. 2014) same).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Golikov* is on point. There, the plaintiff alleged that the "avocado oil" claim at issue was "material because consumers are willing to pay a higher price for avocado oil not adulterated with other oils, and consumers rely on the representation of the product packaging before making a purchase." *Golikov,* 2025 WL 648532 at * 4. The court rejected defendant's argument that plaintiff failed to allege materiality, finding that it rested "entirely on the flawed falsity argument that Plaintiff has failed to meticulously detail how, and to what extent the Product was adulterated." *Id.* "Because [the falsity] argument fail[ed] … Defendant's materiality argument also fail[ed]." *Id.*

As in *Golikov*, Plaintiffs allege the Class Products are adulterated because testing revealed they do not conform to the fatty acid profile of avocado oil and the Products contained levels of Palmitic, Stearic, and Behenic acid that fall out of the Codex standard for avocado oil. SAC ¶¶ 44-55; *supra* § I(D). Plaintiffs detail at length how fatty acid profiles are used to create a uniform standard for cooking oils, and that products that fall outside that standard, like the Class Products, are adulterated. SAC ¶¶ 31-43. Moreover, Plaintiffs allege "[t]he Avocado Oil Representation is material" to consumers because "[a]vocado oil is well-known to be one of the healthiest cooking oils" and "[c]onsumers reasonably expect to know what type of oil they are consuming." *Id.* ¶ 27-29. As a result, "[c]onsumers purchased, and continue to purchase, the Class Products in part because the Avocado Oil Representation conveys the unequivocal message that it contains only avocado oil." *Id.* ¶ 30. Further, "Plaintiffs and Class members would have paid less for the Class Products, or would not have purchased them at all, if not for the Avocado Oil Representation." *Id.* Nothing more is required at this stage to plead materiality. *See Samet v. Proctor & Gamble Co.*, 2019 WL 13167115, at *7 (N.D. Cal. Jan. 15, 2019) ("Most important, ingredients matter. Representations about specific ingredients' presence or absence in a product are almost self-evidently material in that an advertiser is intending to make a consequential effect on a consumer.").

## II.    PLAINTIFFS STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY

Defendant argues that the implied warranty claims fail because "plaintiff[s] must show that the product did not possess even the most basic degree of fitness for ordinary use." MTD at 14 (internal quotations and citations omitted). That is false.

Uniform Commercial Code section 2-314 (codified as Cal. Com. Code § 2314) recognizes multiple ways in which an implied warranty of merchantability can be breached. *See* Cal. Com. Code § 2314(2)(c). In fact, "the implied warranty of merchantability … is breached where the goods do not conform to the promises or affirmations contained on the container or label." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 189 (2003); *see also* Cal. Com. Code § 2314(2)(f). Here, the Class Products are sought by consumers who are looking specifically for avocado oil which is "well-known to be one of the healthiest food oils [because] … studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure, LDL cholesterol, as well as reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels." SAC ¶ 28. Defendant markets the Class Products as "Avocado Oil" and lists avocado oil as the sole ingredient in response to this consumer demand, when the Class Products do not actually conform to such affirmations. SAC ¶¶ 23-25, 30. Thus, Plaintiffs sufficiently allege a breach of the implied warranty of merchantability. *Morris v. Mott's LLP*, 2019 WL 948750, at *6 (C.D. Cal. Feb. 26, 2019) (denying motion to dismiss where "natural" product contained artificial ingredients).

## III.    PLAINTIFFS STATE A CLAIM FOR INTENTIONAL MISREPRESENTATION

Defendant argues that "Plaintiffs' intentional misrepresentation claim fails" because they "fails [sic] to allege the requisite fraudulent intent." MTD at 14-15. But "knowledge and intent need only be alleged generally to state a valid claim[.]" *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *2 (N.D. Cal. Aug. 10, 2011). Here, the SAC includes the required allegations. Plaintiffs allege how Trader Joe's promotes the quality of its private label products, including the Class Products. "Trader Joe's maintains that they 'buy products [they] think are winners[,]' and that '[e]ach product passes certain criteria in order to earn its way to our shelves – including a rigorous tasting panel.'" SAC ¶ 16; *see also id.* ( "'Please be assured, what it says on the label is what's in the bottle.'"); *id.*, ¶ 26 ("Trader Joe's does not disclose anywhere that the Class Products are adulterated with other oils."); *id.*, ¶ 78 ("Trader Joe's has represented and continues to represent to the public, … through its deceptive packaging, that the Class Products are only avocado oil."); *id.*, ¶ 121 ("Trader Joe's knew that the *Avocado Oil Representation* was misleading. Trader Joe's

1  intends for Plaintiffs and other consumers to rely on the *Avocado Oil Representation*, as evidenced

2  by Trader Joe's intentionally and conspicuously placing it on the packaging of the Class

3  Products."). No more is required at this stage. *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp.

4  2d 1060, 1067 (N.D. Cal. 2009) ("Rule 9(b)'s heightened pleading requirements do not apply to

5  allegations regarding an accused's state of mind—thus, knowledge need only be alleged generally

6  to state a valid claim for fraud.").

7  **IV.    PLAINTIFFS STATE A CLAIM FOR PUNITIVE DAMAGES**

8          Defendant contends Plaintiffs "still fail to allege sufficient facts supporting their request for

9  punitive damages." MTD at 15. That is wrong. As an initial matter, it is premature to dismiss

10  Plaintiffs' request for a remedy at the motion to dismiss stage. *See, e.g., Smith v. Santa Cruz*, 2023

11  WL 8360054, at *5 (N.D. Cal. Dec. 1, 2023) ("While district court opinions can vary on this matter,

12  the Court's holding is widely shared by many district courts in this Circuit. … Plaintiffs' prayer for

13  punitive relief is not an independent claim; it is a remedy where the Court has found the underlying

14  claim is well-plead. Therefore, the Court will not address Lazar's arguments regarding striking

15  Plaintiffs' prayer for punitive relief under his 12(b)(6) theory."); *Oppenheimer v. Southwest Airlines*

16  *Co.*, 2013 WL 3149483 at *4 (S.D. Cal. June 13, 2013) ("Because punitive damages are but a remedy,

17  and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for

18  punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); *Leon-Calderon v.*

19  *Old Dominion Freight Line, Inc.*, 2023 WL 1931328, at *6 (C.D. Cal. Feb. 10, 2023) ("Rule 12(b)(6)

20  is not an appropriate vehicle to attain dismissal of a remedy sought in a pleading."); *Kev & Cooper,*

21  *LLC v. Furnish My Place, LLC*, 2021 WL 6618745, at *3 (C.D. Cal. Nov. 28, 2021) ("Neither Rule

22  12(b)(6) nor Rule 12(f) authorizes dismissal of a prayer for damages in a pleading.").

23          Nonetheless, if the Court determines this issue is suitable for disposition at this stage,

24  Plaintiffs sufficiently state a claim for punitive damages. Under California Civil Code § 3294(a), a

25  plaintiff can recover punitive damages "where it is proven by clear and convincing evidence that the

26  defendant has been guilty of oppression, fraud, or malice." However, while state law governs the

27  "substantive claim for punitive damages … the Federal Rules of Civil Procedure govern the punitive

28  damages claim procedurally with respect to the adequacy of pleadings." *Clark v. State Farm Mut.*

1

2  *Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005). Federal Rule of Civil Procedure 9(b) provides

3  that "malice, intent, knowledge, and other conditions of the mind may be alleged generally." *Rees v.*

4  *PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015). Accordingly, Plaintiffs must only "state a

5  claim to relief that is plausible on its face" to sustain a demand for punitive damages. *Bell Atlantic*

    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
6
        Here, Plaintiffs allege entitlement to punitive damages. *First*, Plaintiffs allege that "Trader
7
    Joe's maintains that they "buy products [they] think are winners[,]" and that "[e]ach product passes
8
    certain criteria in order to earn its way onto our shelves – ***including a rigorous tasting panel***." SAC
9
    ¶ 16 (emphasis added.) *Second*, Plaintiffs allege that Defendant is aware oil adulteration is a problem.
10
    *Id.* (describing Defendant's response to adulteration in olive oil.) *Third*, despite testing its products,
11
    Defendant "marketed, labeled, advertised, and sold" the Class Products "to consumers with
12
    packaging that has prominently represented that it is avocado oil." *Id.* ¶ 1; *see id.* ¶¶ 22-26. Moreover,
13
    "Trader Joe's does not disclose anywhere that the Class Products are adulterated with other oils." *Id.*
14
    ¶ 26. These allegations are sufficient on the pleadings. *See Sidhu v. Bayer Healthcare Pharms. Inc.*,
15
    2023 WL 6541865, at *13 (N.D. Cal. Oct. 5, 2023) ("Plaintiff alleges that punitive damages are
16
    warranted '[a]s a result of Defendant's willful and malicious conduct.' …This allegation, together
17
    with Plaintiff's . . . claims for fraud and violation of the CLRA, are sufficient to state a request for
18
    punitive damages."); *see Shank v. Presidio Brands, Inc., 2018 WL 510169*, at *11 (N.D. Cal. Jan. 23,
19
    2018) (declining to dismiss demand for punitive damages where plaintiff alleged defendant knew
20
    and intended for consumers to rely on its misrepresentations); *Ruhnke v. SkinMedica, Inc.*, 2014 WL
21
    12577172, at *11 (C.D. Cal. Sept. 5, 2014) (plaintiff adequately pled demand for punitive damages
22
    where "the fraudulent conduct alleged in the FAC is corporate-wide").
23
                                        **CONCLUSION**
24
        Accordingly, Plaintiffs respectfully request that this Court deny Defendant's motion to
25
    dismiss in its entirety. However, if the Court determines that the pleadings are deficient, Plaintiffs
26
    request leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671
27
    (9th Cir. 2017).
28

1

2   Dated:  October 29, 2025          **SMITH KRIVOSHEY, PC**.

3                                     By:  ___/s/ *Brittany S. Scott*_____
                                              Brittany S. Scott

4
                                      Yeremey O. Krivoshey (State Bar No. 295032)
5                                     Brittany S. Scott (State Bar No. 327132)
                                      28 Geary Street, Ste. 650, #1507
6                                     San Francisco, CA 94108
                                      Telephone: (415) 839-7000
7                                     Facsimile: (888) 410-0415
                                      Email: yeremey@skclassactions.com
8                                              brittany@skclassactions.com

9
                                      **SMITH KRIVOSHEY, PC**.
10                                    Joel D. Smith (State Bar No. 244902)
                                      8667 Boylston Street, 5th Floor, Ste. 1520
11                                    Boston, MA 02116
                                      Telephone: (415) 839-7000
12                                    Facsimile: (888) 410-0415
                                      Email: yeremey@skclassactions.com
13                                             brittany@skclassactions.com

14
                                      **BURSOR & FISHER, P.A.**
15                                    Neal J. Deckant
                                      1990 North California Blvd., 9th Floor
16                                    Walnut Creek, CA 94596
                                      Telephone: (925) 300-4455
17                                    Facsimile: (925) 407-2700
                                      E-mail: ndeckant@bursor.com
18
                                      **FARUQI & FARUQI, LLP**
19                                    Lisa T. Omoto (SBN: 303830)
                                      1901 Avenue of the Stars, Suite 10600
20                                    Los Angeles, CA 90067
                                      Telephone: (424) 256-2884
21                                    E-mail: lomoto@faruqilaw.com

22                                    *Attorneys for Plaintiffs*

23

24

25

26

27

28